UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,


                  v.                                            15 Civ. 9764 (WHP)

                                                   ECF Case

ATLANTIC ASSET MANAGEMENT, LLC,

                        Defendant.

_____


<u>First Report of the Receiver</u>
<u>Marti P. Murray</u>
<u>January 22, 2016</u>


INTRODUCTION

1. I submit this first report (the "First Report") in my capacity as receiver (the "Receiver") for the estate of Atlantic Asset Management, LLC ("AAM" or the "Firm") pursuant to the January 8, 2016 Amended Order Granting Preliminary Injunction and Other Interim Relief (the "Receiver Order"). This report follows two earlier reports submitted during the period I was Temporary Monitor, dated December 30, 2015 and January 6, 2016.

ACTIVITIES OF THE RECEIVER

2. I was appointed as AAM's Receiver on January 8, 2016. Since that time my activities have included the following:

    a) Maintaining an onsite presence at AAM's Stamford, CT offices for 8 of the 10 days of the Receivership, with certain of my staff maintaining an onsite presence in Alexandria, VA and Overland Park, KS for selected days;

    b) Commencing the wind down of AAM by having clients transition off the AAM platform in an orderly fashion, cutting staff and payroll, consolidating activities, minimizing expenses, and billing/collecting receivables;

c) Communicating with clients, their consultants, current employees, former employees, bank officers, fund administrators, sub-advisors, office furniture and equipment liquidators, and other service providers with respect to the wind down;

d) Transferring AAM's bank accounts at ███████████████████████████████ to Receivership accounts at those same financial institutions;

e) Retaining counsel and conferring with them on a variety of topics including, but not limited to, case status, payroll taxes due, insurance policies, Receivership bank accounts, potential recoveries from AAM's landlord in Connecticut, information sharing arrangements, document retention, and communications with former employees;

f) Overseeing the provision of services to clients, including limited trading, reporting and invoicing, and activities relating to their transition away from AAM;

g) Assessing AAM's assets and liabilities;

h) Identifying potential causes of action against insiders, affiliates, and third parties;

i) Addressing issues with respect to █████████████████████████ including, but not limited to, issues with its NAV, sub-advisors, and ███████████████ ;

j) Meeting with an independent broker-dealer to assess the valuation of, and potential monetization strategies for, ███████████ ;

k) Establishing lines of communication with relevant third parties and conducting formal and informal interviews with certain of them, including ███████████████████ ██████████ and a representative of ████████████████████████ ;

l) Cataloging and organizing documents received;

m) Communicating with the Commission with respect to my activities;

n) Maintaining contemporaneous time records.

STATUS OF THE WIND DOWN

3. Since the January 8 commencement of the Receivership, ███ of AAM's ███ employees (including consultants) have been terminated.[1]  I have been working with the remaining staff of nine individuals to wind down the Firm's operations.  The Stamford office has served as the nexus of activity, with ████████ of the employees in the Alexandria office remaining and ███ in Overland Park. In general, I have received very good cooperation from the remaining personnel.

4. I am targeting wrapping up the Firm's physical operations by January 29. By this date the three office locations in Stamford, Alexandria, and Overland Park should be surrendered to the respective landlords ████████████████████████████████████████ ████████████████████████████████████████████████████ I am working with liquidators to obtain bids for office furniture, art, and computer equipment at the various locations. ████████████████████████████████

5. As of January 8, 2016 AAM had ███ clients who had either not previously terminated AAM as investment manager or for whom AAM had some ongoing responsibility to liquidate positions on the client's behalf.  I held a call with the clients on January 11, the first business day of the Receivership, and requested that the clients terminate AAM if they had not already done so and revoke the Firm's trading authority.

6. As of January 19, all clients in separately managed accounts[2] had terminated AAM and revoked trading authority.  Any residual trading activity performed since that date has only been done as an accommodation to certain clients at their written request.

7. To facilitate the transition of clients in separately managed accounts, I have directed AAM staff to:

   a) Close out futures positions at the written request of selected clients – this activity is expected to be completed and all trades settled by January 26;

   b) Sell odd-lot positions at the written request of selected clients – this activity has been completed and all trades will be settled by January 26;

   c) Certify positions held by clients with their custodians so there is clarity about all positions as of a point in time;

---

[1] ████████████████████████████ resigned shortly after the Receivership was instituted. In addition, on January 8, certain AAM employees and officers were denied access to AAM's offices, including ████████████████████████████████████████████████ ████████████████████████████████████████████████

[2] The only "clients" not in separately managed accounts are the ████████████ ████████████

d) Provide December month-end information packages to clients.

8. Clients have received assistance from AAM to facilitate an orderly transition of their accounts to other managers. AAM has also prepared and sent out invoices for the management fees due AAM with respect to the fourth quarter of 2015 and the applicable portion of first quarter of 2016. As of January 21, outstanding management fees approximate ███████, and collection is expected by the end of February 2016.

███████████████████████

9. AAM maintains responsibility for the wind down of ██████████████████████ ████████████████████████████████████████████ ██████. In order to wind down this fund, the following issues will need to be addressed:

a) ████████████████████████████████████████████ ████████████████████████████████████. I am working with the sub-advisors to monetize the positions. The recent instability in the financial markets may be impacting liquidity for certain of the securities. There are also unresolved questions with respect to management fees that may be due the sub-advisors and how they will be addressed. I am investigating these issues and exploring avenues for potential resolution.

b) ████████████████████████████████████████████ ███████████ I am exploring various alternatives for this and have been actively communicating with ████████████████████ I have also contacted ██ ████████████████████████████████, as well as with a broker-dealer who may be able to assist me with both valuing and potentially monetizing the bonds, ██████████████████████████.



██████████████████████████████████████████████
████████████████████████

████████████

10. I have learned that there is an ████████████████ fund called the ███████
for which AAM technically serves as manager. ███████
████████████████████████████████ This arrangement will need to be addressed and
I have established contact with ████████████████, the custodian ████████████.

ATLANTIC ASSET MANAGEMENT LIQUIDITY AND FINANCIAL POSITION

11. A snapshot of AAM's recent liquidity position is shown below :

12. AAM historically maintained two bank accounts – ███████████████████████
████████████████. Funds in these accounts have been transitioned into Receivership
accounts at the same financial institutions.

████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████

14. For the period from January 12-20 Receiver's counsel has incurred billings of $19,152.50, as follows:

| Project Category | Time | Amount |
| --- | --- | --- |
| Asset Analysis and Recovery (including review and analysis of insurance policies and other documents related to potential causes of action and other sources of recovery) | 8.30 | $4,142.50 |
| Business Operations (including activity with respect to the wind-down of operations) | 1.30 | $697.50 |
| Case Administration (including meetings and communications with Receiver regarding case requirements and priorities; communications with third parties regarding case) | 13.20 | $7,380.00 |
| Receivership General (including review of pleadings and other documents for background) | 13.50 | $6,932.50 |
| Total | 36.30 | $19,152.50 |

Payroll Taxes

15. I understand that AAM is in arrears on the payment of payroll taxes commencing with the ▮▮▮▮▮▮▮▮▮▮▮▮▮. An IRS agent visited AAM's Alexandria offices on January 12 with a notice indicating a past due amount of ▮▮▮▮▮▮▮ with respect to ▮▮▮▮▮▮▮▮▮ payroll taxes. I have also learned that the IRS had mailed a notice to AAM's offices in Alexandria that had arrived January 6, 2015 stating that ▮▮▮▮▮▮ was due by ▮▮▮▮▮▮ ▮▮▮ for ▮▮▮▮▮▮▮▮▮▮ payroll taxes. This issue is being investigated with the assistance of the Receiver's counsel.

POTENTIAL RECOVERY ACTIONS

16. I am identifying and investigating various causes of action that may be available to AAM and/or ▮▮▮▮ in addition to the potential cause of action against ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The following description is meant to provide an update on those identified thus far and should not be viewed as an all-inclusive list of potential causes of action.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████

████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

## Potential Causes of Action Relating to ███████████

20. There may be potential causes of action relating to ███████████ that could potentially benefit ████████████, and I continue to gather and analyze information to assess the viability of such potential causes of action.  To this end, I have requested access to certain documents that the SEC already has in its possession.  I have also made contact with various parties involved in ██████████████████████, including ██████████████████ ████████████████████████.

## Other

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████

████████████████████████████████████

██████████████████████████████████████████████
████████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████

Dated: January 22 2016

Respectfully Submitted,

Marti P. Murray