UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        v.        15 Civ. 9764 (WHP)

        ECF Case

ATLANTIC ASSET MANAGEMENT, LLC,

        Defendant.
_____

<u>Sixth Report of the Receiver</u>
<u>Marti P. Murray</u>
<u>July 8, 2016</u>

INTRODUCTION

1. I submit this sixth report (the "Sixth Report") in my capacity as receiver (the "Receiver") for the estate of Atlantic Asset Management, LLC ("AAM" or the "Firm") pursuant to the January 8, 2016 Amended Order Granting Preliminary Injunction and Other Interim Relief (the "Receiver Order"). This report follows two reports submitted during the period I was Temporary Monitor, dated December 30, 2015 and January 6, 2016, and five reports filed during the Receivership dated January 22, 2016; February 9, 2016; March 9, 2016; April 8, 2016; and May 9, 2016 (the "Fifth Report").

ACTIVITIES OF THE RECEIVER

2. I have continued to wind down the business affairs of AAM. Since the filing of the Fifth Report, my activities have included:

    a) In coordination with the Securities and Exchange Commission (the "SEC"), formulating a proposed Joint Plan of Distribution, which was filed with the Court on July 7, 2016 (the "Proposed Joint Plan");

    b) Continuing to oversee the disposition of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (▮▮▮▮▮, or the "Fund") until an arrangement has been made by ▮▮▮▮▮, in consultation with its counsel, for a replacement manager or general partner. Activities have included

communicating with ████, overseeing ████ financial affairs, and communicating with ████████████████████████████████████████ and the remaining sub-advisors to ████;

c) Achieving a settlement with AAM's former landlord in Stamford, Connecticut with respect to a ████████ pre-judgment attachment obtained by the landlord as a result of past due rent obligations (the "Landlord Settlement"). The Landlord Settlement, which was approved by the Court on June 9, resulted in the receipt of ████████ on June 30, 2016;

d) Pursuing claims against various AAM insurance policies, including under policies for directors and officers liability, errors and omissions, a policy for employee theft, and a financial institutions bond for investment firms;

e) Communicating with the SEC, and responding to various requests for documents by the SEC and the United States Department of Labor;

f) Tracking AAM's liquidity position on a regular basis, collecting receivables, depositing checks received, and managing Receivership payables;

g) Addressing the transition of employee accounts held in AAM's 401(k) profit sharing plan to rollover accounts.

STATUS OF THE WIND DOWN

3. The remaining tasks for the Receivership include a) finalizing the disposition of ████ which will occur when ████ identifies and puts in place a replacement manager or general partner, while continuing to oversee it in the short term; b) accounting for the Receivership, including following up on any remaining receivables for outstanding management fees due; c) addressing certain employee-related issues with respect to the Firm's 401(k) plan; d) in coordination with the SEC, overseeing the implementation of the proposed Joint Plan, if approved by the Court; e) filing the appropriate required tax returns; and f) pursuing insurance and other potential recoveries.

████████████████████████████████

4. As of May 31, 2016 the total indicated market value of ████ was approximately ████████, consisting of cash in the approximate amount of ████████████ securities positions (other than the ████████ face amount of ████████) with a total indicated market value of approximately ████████, and interest accruals of ████████. In early June 2016,

CONFIDENTIAL

███ requested that the remaining positions (other than the ████████) be monetized by June 30, 2016, subject to market liquidity conditions.

5. As of June 30, 2016, ████ holds cash in the amount of approximately ████████, and ██ ██ positions held by one sub-advisor, in addition to the ████████. I am informed by the sub-advisor that the two remaining positions currently have limited liquidity. In the aggregate, the two remaining positions have an indicated market value of approximately ███████.

6. I am informed that ██████ is in the process of identifying a replacement general partner for ████ and I will work with them to facilitate a smooth transition as the receivership winds down. I anticipate that this can be accomplished prior to any distribution under the proposed Joint Plan, if approved.

<u>LIQUIDITY AND FINANCIAL POSITION</u>

7. AAM's liquidity position as of July 5, 2016 is as follows:

[redacted]

8. As of July 5, 2016, the combined cash balance in AAM's receivership bank accounts totaled ████████, as compared to ████████ as of the Fifth Report, a ████████. This ████████ is largely due to the payment of March and April receivership expenses of ████████ in the aggregate, offset by the receipt of approximately ██████ from the Landlord Settlement, as well as the collection of outstanding client invoices. ████████ in outstanding invoices continue to be unpaid. It is unknown if these invoices will be ever be paid without the commencement of litigation. Two clients represent the substantial majority of the outstanding balance in approximately equal amounts, and one of these clients has refused to pay.

9. Under the Proposed Joint Plan, it is anticipated that approximately ████████ will be available for a general distribution, subject to reserves for receivership expenses to date and for future activities (the "General Distribution"). If the Proposed Joint Plan is approved, funds will be disbursed as agreed by me and the SEC as follows: first, to former AAM employees for one week of salary during the temporary monitorship for which they were not previously paid. Second, certain payments would then be made to various payroll

taxing authorities. Third, remaining funds are to be distributed to the ten (10) investors placed in the ▮▮▮▮▮▮▮ *pro rata*. The Proposed Joint Plan also provides for potential supplemental distributions (the "Supplemental Distribution" or "Supplemental Distributions"), in the event additional assets come into the Receivership through insurance proceeds, recovery actions, or from other sources. If there is a Supplemental Distribution, funds are to be disbursed first to unsecured creditors until their recovery is equal to that obtained by the Tribal Bond investors through the combination of the General Distribution and any direct distribution of insurance proceeds, and second, *pro rata* between unsecured creditors and Tribal Bond investors.

AAM'S PROFIT SHARING AND 401(K) PLAN

10. AAM had historically maintained a Profit Sharing and 401(k) plan for employees. Over the past few months employees have been transferring their balances to new brokerage firms. These brokerage firms do not appear to have uniform requirements with respect to the paperwork required from AAM to effectuate such transfers. I have been assisting the former AAM employees in transitioning their accounts as requested. I had set a deadline and informed AAM employees that their accounts had to be transitioned by June 15, 2016. There remain four (4) AAM employees who are still in the plan, and I am informed that all four (4) are in the process of completing paperwork or otherwise transitioning to a replacement custodian. I am hopeful that any remaining issues related to AAM's 401(k) plan can be completed prior to any distribution under an approved plan.

ATTORNEY'S FEES

11. For the period from May 1, 2016 through May 31, 2016, Receiver's counsel, Klestadt Winters Jureller Southard & Stevens, LLP ("KWJS&S"), has spent a total of 65.20 hours on Receivership matters, with fees for that same period of $32,855, as follows:

| Project Category | Time | Amount |
| --- | --- | --- |
| Asset Analysis and Recovery (including discussions with investor in ▮▮▮▮ regarding winding-up of fund; negotiation of settlement with former landlord; analyzing certain insurance policies for potential recovery). | 16.40 | $8,890.00 |
| Case Administration (including review and commenting on Receiver's reports; reviewing pleadings in related cases; preparing for and attending status conference; other case administration matters). | 11.60 | $6,605.00 |
| Employee Benefits and Pensions (including issuance of subpoenas to plan administrator and plan custodian for documents after unsuccessful efforts to obtain voluntarily). | 4.30 | $2,042.50 |

| | | |
|---|---|---|
| Evidence Preservation (including activity related to IT equipment and preservation of data). | 0.40 | $190.00 |
| Fee Applications (including preparing monthly fee applications for the Receiver and KWJS&S and related tasks; discussions with SEC related thereto). | 4.90 | $0.00[1] |
| Plan of Distribution (including drafting of joint plan of distribution and related pleadings; discussions with SEC and Receiver related thereto). | 12.50 | $7,615.00 |
| Receivership General (all matters not otherwise segregated into a separate project category, including time spent addressing miscellaneous receivership tasks, responding to communications from employees, creditors and other interested parties). | 15.10 | $7,512.50 |
| Total | 65.20 | $32,855.00 |

12. For the period from June 1, 2016 through June 30, 2016, Receiver's counsel, KWJS&S, has spent a total of 79.10 hours on Receivership matters, with fees for that same period of $39,270, as follows:

| **Project Category** | **Time** | **Amount** |
|---|---|---|
| Asset Analysis and Recovery (including discussions with investor in ▮▮▮ regarding winding-up of fund; documentation of settlement with former landlord; analyzing certain insurance policies for potential recovery and preparing necessary documentation to assert claims with respect to certain insurance policies). | 45.80 | $23,255.00 |
| Claims Administration and Objections (including review of claims analysis prepared by Receiver; preparing of distribution schedules). | 0.50 | $172.50 |

---

[1] KWJS&S has written off $2,327.50, representing 4.9 hours of services performed during May 2016 with respect to its time preparing fee applications for itself and the Receiver and related tasks at the request of the SEC and in accordance with the SEC Billing Guidelines.

| | | |
|---|---|---|
| Employee Benefits and Pensions (including reviewing of documents supplied by 401(k) plan administrator and custodian in response to subpoenas). | 2.20 | $1,105.00 |
| Evidence Preservation (including activity related to transition of IT equipment and paper files to SEC; interfacing between SEC and Receiver regarding documents requested by U.S. Department of Labor). | 4.60 | $2,185.00 |
| Fee Applications (including preparing monthly fee applications for the Receiver and KWJS&S and related tasks; discussions with SEC related thereto). | 2.10 | $0.00[2] |
| Plan of Distribution (including drafting of joint plan of distribution and related pleadings; discussions with SEC and Receiver related thereto). | 19.40 | $9,855.00 |
| Receivership General (all matters not otherwise segregated into a separate project category, including time spent addressing miscellaneous receivership tasks). | 4.50 | $2,697.50 |
| Total | 79.10 | $39,270.00 |

POTENTIAL RECOVERY ACTIONS

DISTRIBUTIONS MADE BY AAM TO ▆▆▆▆▆▆▆▆

13. As previously reported, I made a demand on ▆▆▆▆▆▆▆▆▆▆▆▆, through her counsel, for the immediate return of ▆▆▆▆ that was distributed to her on December 31, 2015. I was informed by counsel that the money had already been spent and that ▆▆ does not have the means to return the ▆▆▆▆. I have also learned that ▆▆ received a total of ▆▆▆▆▆▆ in distributions from AAM in 2015 (including the ▆▆▆▆ taken on December 31) and had received ▆▆▆▆ from Hughes Capital Management (AAM's predecessor) in 2014. I requested that ▆▆▆▆ counsel provide me with her certified financial statement, but I have not yet received it.



---

[2] KWJS&S has written off $997.50, representing 2.10 hours of services performed during June 2016 with respect to its time preparing fee applications for itself and the Receiver and related tasks at the request of the SEC and in accordance with the SEC Billing Guidelines.

6

INSURANCE POLICIES

14. AAM maintained a number of insurance policies, including for directors and officers liability and errors and omissions, among others. Claims have been made against four of the policies and I am working with counsel and following up with the insurers with respect to these claims.

CONCLUSION

15. If the Proposed Joint Plan is approved, distributions to stakeholders will be made promptly thereafter. The remaining business of the Receivership should then be to follow up on any distribution checks that are not deposited, pursue recovery actions, including under AAM's insurance policies, perform tasks as required under an approved plan, including, but not limited to, maintaining AAM's books and records for the time period proscribed, overseeing the preparation and filing of any necessary tax returns, and providing periodic reports at the Court's direction.

Dated: July 8, 2016

Respectfully Submitted,

_____
Marti P. Murray