

# Objection to the Distribution Plan for AAM in regards to Amount Proposed for Employee Michael T. Allen



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**Michael Allen** <mtallen330@gmail.com>   Sat, Sep 10, 2016 at 1:09 AM
To: brownn@sec.gov, tklestadt@klestadt.com, marti.murray@murrayanalytics.nyc, Gara Paulson <gpaulson@murrayanalytics.nyc>
Cc: david.larosa@ct.gov, christine.flammia@ct.gov, Mike Morgan <mmorgan@workplace.org>

To Atty Nancy A. Brown, Atty Tracy Klestadt and other involved parties:

I am submitting this Objection to the Proposed Joint Plan Of Distribution ("The Plan") as set forth in the Hon. U.S. District Judge William H. Pauley III's Order of 8/2/2016. This Objection is being submitted within the "Objection Deadline" as set forth and defined in the same Order.

I particularly object, and find objectionable, the amount of $2,884.62 being represented as "100%" of the amount owed to me by Hughes Capital Management ("HCM") dba as "Atlantic Asset Management" ("New AAM" or just "AAM") after acquiring "Old AAM" on 4/1/2016 - I find it objectionable as $2,884.62 is in fact **ONLY 1.32% of my actual, documented and CT Department of Labor ("CT DOL") Verified Claim, not 100% of the bonafide "Claim",** or anywhere remotely close to it. I also object to the means used to represent this amount as 100% of the bonafide claim - intentionally and abjectly ignoring the repeated attempts of the Employee, as well as the CT DOL - the governing Labor Law authority for AAM's Stamford, CT Office, to have the legitimate Claim reviewed, heard and posted on the record such that the Court-Ordered Receiver played judge, jury and executioner of the determined claim and defined "100% of Approved Claim" however she saw fit regardless of how badly it conflicted with the actual documentable record. IOW, causing intentional and significant additional pain, distress, suffering and further victimization of the employee to the point where: i) this employee was not even approved for Unemployment Benefits for 10 Weeks after filing his "Initial Claim" and subsequent "Weekly Continuing Claims" due to the Court-Ordered Receiver's failure to report her plan to "Discontinue Operations" to CT Authorities; ii) the Employee is under financial attack from every corner; iii) the employee is having trouble finding employment due, among other things, to damaged credit and background checks; and finally, iv) the Employee, along with his two children, are on the verge of being destitute and homeless, which is why this objection, and Claim, is being filed by the Employee yet again, as the Employee cannot afford a lawyer to make the submission!

The first thing which should be pointed out is the fact that HCM was the "acquiring firm", not Old AAM. Old AAM was the "acquired firm", HCM merely changed its name to "AAM" after the finalization of the acquisition on 4/1/2015, but never moved its Corporate Headquarters from the original, and continuous, headquarters of HCM: 916 Prince Street; Alexandria, VA 22314. Nor did HCM, now dba AAM, change their Tax ID #. The original HCM SEC Registration was maintained as the "Successor RIA", not Old AAM's SEC Registration, when the RIA's were merged after 4/1/2015. IOW, New AAM was merely HCM dba AAM. The "Employment Agreement By and Between Hughes Capital Management, Inc And Michael T. Allen" ("Employment Agreement" - attached to this e-mail as the first attachment) was clearly still in force as defined under clause "b." on page 5 of the agreement under section "7. General Provisions.".

The next thing that should be pointed out, the Claim that is included for me does not even amount to what was owed to me for days worked since last pay period. According to CT DOL, the governing authority, pay must be made within 24 hours of termination through the date of termination. The e-mail and letter attached below in attachments two and three clearly state "Termination Date" as 1/11/2016. My annual salary $150,000 (stated on the top of page 2 in the Employment Agreement under section "2. Compensation and Benefits") divided by 365 days and multiplied by 11 days is equal to $4,520.56. The "100% Claim" that was included for me is only equal to 64% of the 11 days (i.e., my termination was even illegally "backdated" to 1/7/2016 under CT Labor Law, or 7 days of pay rather than 11, which I wasn't even given "at termination" in variance with CT Labor Law).

As clearly stated in the last paragraph on page 1 of the Employment Agreement attached below, each party to the agreement has a reciprocal obligation to provide "at least eight (8) weeks prior written notice" of intent to terminate the mutual "at will" agreement.

Then we have 2015 "Vacation" - we were encouraged via e-mail communication to not use our 2015 Vacation at the end of the year as we were told in the e-mail that the firm would permit us to carry over unused Vacation into 2016 if we did not use it (policy was "use it or lose it" which the e-mail explicitly stated would not apply to 2015 if we didn't use it during

the last several months of 2015). I worked most of the days during the holidays and carried two weeks Vacation into 2016.

And finally, I was promised a formulaic "Incentive Compensation" based on Management Fees earned by HCM as clearly identified on page 2 of the Employment Agreement under clauses "b." and "d." under section "2. Compensation and Benefits.". At the time I joined the firm, Frankie Hughes - the founder and sole-proprietor of HCM at the time of my hire (Frankie founded firm in 1993) estimated my 2014 Incentive and Deferred Compensation ("Incentive Comp") via formula and estimated my 2014 total payments after pro-ration for one-half a year (i.e., from the time I joined the firm on Monday, 6/16/2014) to be $62,500. After Frankie sold the firm in mid-August 2014, I asked again and Frankie verified the amount, $62,500, via formula was still valid. Payment was due in March 2015; however, Michelle Morton via GMT Duncan (or as far as I, or any of the other employees, knew at the time to be Michelle via GMT Duncan) began speaking with Old AAM about possibly acquiring them in October 2014 and at some point in early 2015 Michelle asked me if I would consider rolling my 2014 bonus due, into the AAM transaction and offered that in exchange she would base my 2015 Incentive Comp on adjusted revenues (i.e., Management Fees) of the combined firms -- something that would work in my advantage as Old AAM was larger than HCM in terms of AUM and Management Fees. Long-&-short of it, I agreed to let her roll my 2014 Incentive Comp payments into the AAM transaction and 2015. Subsequently, late in the year 2015, Michelle informed me that my 2015 Incentive Comp payments would only amount to $125K or the same as 2014 on an annualized basis. She also told me that they were in the process of restructuring some things with the ownership and capitalization....and payments would be made in early-2016 after the restructuring was complete. I did not argue with her about the 2015 Incentive Comp amount as she controlled the formulas and there was nothing I could do about it, especially after AAM started losing clients and Management Fees.

In summary, my actual bonafide and documented Wage Claim as verified by the CT DOL, and the claim we were thwarted from getting on this record initially, is as follows:

- Unpaid Wages: 11 days @ $410.96 per day = $4,520.56
- Mandatory Notice per Employment Agreement: 8 weeks @ $410.96 per day = $23,013.76
- Unused 2015 Vacation: 10 days @ $410.96 per day = $4,109.60
- Unpaid 2014 Incentive Comp: $62,500
- Unpaid 2015 Incentive Comp: at a minimum $125,000
- Aggregated total bonafide and documented claim: $219,143.92

I object to the Claim as currently stated in the Proposed Joint Plan of Distribution for beyond obvious, and well-documented, reasons and ask that my Claim be corrected to reflect the actual documented record....what was submitted to the CT DOL.....and what was verified by CT DOL Wage Enforcement Agent, David LaRosa who is cc'ed on this communication and can be reached at (860)263-6611.

A hard-copy of this Objection has also been sent via "Certified USPS Mail" to the offices of Nancy Brown, Marti Murray, Tracey Klestadt and the Hon. William H. Pauley III via the Pro Se Office of the U.S. District Court, Southern District of New York.

Sincerely,

Michael T. Allen
(203)247-9057
Westport, CT

---

**4 attachments**

- **Employment Agreement Michael T. Allen HCM.pdf**
  4645K

- **AAM Email 1.12.2016.pdf**
  145K

- **AAM Letter attached to 1.12.2016 Email.pdf**
  34K

- **CT DOL Wage Claim and Confirmation 2.4.2016.pdf**
  2664K

# Employment Agreement

## By and Between

## Hughes Capital Management, Inc.

## And

## Michael T. Allen

This Employment Agreement is entered into as of the date of the last signature affixed hereto, by and between Hughes Capital Management, Inc., a Virginia Corporation hereinafter referred to as ("the Company"), and Michael T. Allen, hereinafter referred to as ("Employee").

In consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Hughes Capital Management, Inc. and Employee hereby agree as follows:

1. Position of Employment. The Company will employ the Employee in the position of Portfolio Manager and, in that position, Employee will report to the President and CIO of Hughes Capital Management, Inc. Hughes Capital Management, Inc. retains the right to change Employee's title, duties, and reporting relationships as may be determined to be in the best interests of the Company; provided, however, that any such change in Employee's duties shall be consistent with Employee's training, experience, and qualifications.

   The terms and conditions of the Employee's employment shall, to the extent not addressed or described in this Employment Agreement, be governed by Hughes Capital Management, Inc.'s Company's Policies and Procedures Manual and existing practices. In the event of a conflict between this Employment Agreement and the Policies and Procedures Manual or existing practices, the terms of this Agreement shall govern.

Term of Employment. Employee's employment with Company shall begin on an " at-will" basis and shall continue until termination by Company upon at least eight (8) weeks prior written notice to employee or if by Employee resignation, upon at least eight (8) weeks prior written notice to Company. Employee must fulfill all of Employee's duties and responsibilities set forth above and use Employee's best efforts to train and support Employee's replacement, if any. Failure of Employee to comply with this requirement may result in Termination for Cause described below, but otherwise Employee's salary and benefits will remain unchanged during the notification period. Failure of Employee to comply with this requirement will render the Employee ineligible to participate in the Company bonus program. Hughes Capital Management, Inc. may, in its sole discretion, give Employee severance pay in the amount of the remaining notice period in lieu of actual employment, and nothing herein shall require Company to maintain employee in active employment for the duration of the notice period. For purposes of this Agreement, 'severance' refers to continued payments of base salary, excluding benefits or other forms of compensation.

2. Compensation and Benefits.
    a. Employee shall be paid $150,000 annually subject to applicable federal, state, and local withholding. Employee will be paid in the same manner and on the same payroll schedule in which all Company employees receive payment. Any increases in Employee's annual rate for years beyond the first year of Employee's employment shall be in the sole discretion of Hughes Capital Management, Inc.'s management, and nothing herein shall be deemed to require any such increase.

    b. Deferred Compensation. Employee shall be eligible to participate in a deferred compensation program offered by the Company. Under the program, Hughes Capital Management makes contributions to a Trust Fund, which will pay the Employee a benefit at retirement. If Employee separates from Service before retirement, Employee may receive payment based on a predetermined vesting schedule.

    c. Employee Benefits. Employee shall be eligible to participate in the Company sponsored benefit offerings. The terms and conditions of Employee's participation in Hughes Capital Management, Inc.'s Company's employee benefit plans, policies, programs, or perquisites shall be governed by the terms of each such plan, policy, or program.

    d. Incentive Compensation. In addition to Employee salary, the Employee shall be eligible to receive incentive pay after the successful completion of their "Trial Period" and the Employee remains in good standing with the Company. The Employee's period of eligibility will be calculated on a calendar year, or pro-rated if the Employee has been employed for less than a year. Nothing in this Employment Agreement shall be deemed to require the payment of bonuses awards, or incentive compensation to Employee if such payment would not otherwise be required under the terms of Hughes Capital Management, Inc.'s incentive compensation programs.

3. Duties and Performance. The Employee acknowledges and agrees that he is being offered a position of employment by the Company with the understanding that the Employee possesses a unique set of skills, abilities, and experiences which will benefit the Company, and he agrees that his continued employment with the Company, whether during the term of this Employment Agreement or thereafter, is contingent upon his successful performance of his duties in his position as noted above, or in such other position to which he may be assigned.

    a. General Duties.
        1. Employee shall render to the very best of Employee's ability, on behalf of the Company, services to and on behalf of the Company, and shall undertake diligently all duties assigned to him by the Company.

        2. Employee shall devote his full time, energy and skill to the performance of the services in which the Company is engaged, at such time and place as the Company may direct. Employee shall

not undertake, either as an owner, director, shareholder, employee or otherwise, the performance of services for compensation (actual or expected) for any other entity without the express written consent of the President or the Board of Directors.

3. Employee shall faithfully and industriously assume and perform with skill, care, diligence and attention all responsibilities and duties connected with his employment on behalf of the Company.

4. Employee shall have no authority to enter into any contracts binding upon the Company, or to deliberately create any obligations on the part of the Company, except as may be specifically authorized by the President or Board of Directors of Hughes Capital Management, Inc.

b. Specific Duties. As a Portfolio Manager of Hughes Capital Management, Inc. the Employee shall be employed by Company on a full time basis and shall perform, on behalf of Company and its affiliates, such duties customary to his position and additional duties as may be designated by the Board of Directors or President of Hughes Capital Management, Inc. from time to time. Employee shall render to the very best of Employee's ability, on behalf of the Company, services to and on behalf of the Company or, and shall undertake diligently all duties assigned to him by the President consistent with the duties outlined in the job description of the Portfolio Manager, appended as attachment to this agreement.

c. Termination by the Company For Cause. The Company may, at any time and without notice, terminate the Employee for "cause". Termination by the Company of the Employee for "cause" shall include but not be limited to termination based on any of the following grounds: (a) failure to perform the duties of the Employee's position in a satisfactory manner; (b) fraud, misappropriation, embezzlement or acts of similar dishonesty; (c) conviction of a felony involving moral turpitude; (d) illegal use of drugs or excessive use of alcohol in the workplace; (e) intentional and willful misconduct that may subject the Company to criminal or civil liability; (f) breach of the Employee's duty of loyalty, including the diversion or usurpation of corporate opportunities properly belonging to the Company; (g) willful disregard of Company policies and procedures; (h) breach of any of the material terms of this Agreement; and (i) insubordination or deliberate refusal to follow the instructions of the President of the Company.

d. Termination By Death or Disability. The Employee's employment and rights to compensation under this Employment Agreement shall terminate if the Employee is unable to perform the duties of his position due to death or disability lasting more than 90 days, and the Employee's heirs, beneficiaries, successors, or assigns shall not be entitled to any of the compensation or benefits to which Employee is entitled under this Agreement, except: (a) to the extent specifically provided in this Employment Agreement (b) to the extent required by law; or (c) to the extent that such benefit plans or policies under which Employee is covered

provide a benefit to the Employee's heirs, beneficiaries, successors, or assigns.

4. Confidentiality. Employee agrees that at all times during Employee's employment and following the conclusion of Employee's employment, whether voluntary or involuntary, Employee will hold in strictest confidence and not disclose Confidential Information (as defined below) to anyone who is not also an employee of the Company or to any employee of the Company who does not also have access to such Confidential Information, without express written authorization of the President of the Company. "Confidential Information" shall mean any trade secrets or Company proprietary information, including but not limited to manufacturing techniques, processes, formulas, customer lists, inventions, experimental developments, research projects, operating methods, cost, pricing, financial data, business plans and proposals, data and information the Company receives in confidence from any other party, or any other secret or confidential matters of the Company. Additionally, Employee will not use any Confidential Information for Employee's own benefit or to the detriment of the Company during Employee's employment or thereafter. Employee also certifies that employment with the Company does not and will not breach any agreement or duty that Employee has to anyone concerning confidential information belonging to others.

5. Non-competition. To the fullest extent permitted by applicable law, the terms of the Non-competition Agreement executed by the Employee are incorporated by reference into this Employment Agreement and are made a part hereto as if they appeared in this Employment Agreement itself.

6. Expenses. The Company shall pay or reimburse Employee for any expenses reasonably incurred by him in furtherance of his duties hereunder, including expenses for entertainment, travel, meals and hotel accommodations, upon submission by him of vouchers or receipts maintained and provided to the Company in compliance with such rules and policies relating thereto as the Company may from time to time adopt.

Vacation. Employee is entitled to three weeks of vacation.

7. General Provisions.

    a. Notices. All notices and other communications required or permitted by this Agreement to be delivered by Hughes Capital Management, Inc. or Employee to the other party shall be delivered in writing to the address shown below, either personally, by facsimile transmission or by registered, certified or express mail, return receipt requested, postage prepaid, to the address for such party specified below or to such other address as the party may from time to time advise the other party, and shall be deemed given and received as of actual personal delivery, on the first business day after the date of delivery shown on any such facsimile transmission or upon the date or actual receipt shown on any return receipt if registered, certified or

express mail is used, as the case may be.

If to Hughes Capital Management, Inc.:
   Hughes Capital Management, Inc.
   916 Prince Street
   Alexandria, VA 2314
   Attention: Firm Administrator

If to employee.:
   Michael T. Allen
   1871 Kirby Road
   McLean, Va 22101

Amendments and Termination; Entire Agreement. This Agreement may not be amended or terminated except by a writing executed by all of the parties hereto. This Agreement constitutes the entire agreement of Hughes Capital Management, Inc. and Employee relating to the subject matter hereof and supersedes all prior oral and written understandings and agreements relating to such subject matter.

b. Successors and Assigns. The rights and obligations of the parties hereunder are not assignable to another person without prior written consent; provided, however, that Hughes Capital Management, Inc. without obtaining Employee's consent, may assign its rights and obligations hereunder to a wholly-owned subsidiary and provided further that any post-employment restrictions shall be assignable by Hughes Capital Management, Inc.to any entity which purchases all or substantially all of the Company's assets.

c. Severability; Provisions Subject to Applicable Law. All provisions of this Agreement shall be applicable only to the extent that they do not violate any applicable law, and are intended to be limited to the extent necessary so that they will not render this Agreement invalid, illegal or unenforceable under any applicable law. If any provision of this Agreement or any application thereof shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of other provisions of this Agreement or of any other application of such provision shall in no way be affected thereby.

d. Waiver of Rights. No waiver by Hughes Capital Management, Inc. Company or Employee of a right or remedy hereunder shall be deemed to be a waiver of any other right or remedy or of any subsequent right or remedy of the same kind.

e. Gender. Unless the context otherwise requires, whenever used in this Contract, the singular shall include the plural, the plural shall include the singular, and the masculine gender shall include the neuter and feminine genders, and vice versa.

f. Definitions; Headings; and Number. A term defined in any part of this Employment Agreement shall have the defined meaning wherever such term is used herein. The headings contained in this Agreement are for reference purposes only and shall not affect in any manner the meaning or interpretation of this Employment Agreement. Where appropriate to the context of this Agreement, use of the singular shall be deemed also to refer to the plural, and use of the plural to the singular.

g. Counterparts. This Agreement may be executed in separate counterparts, each of which shall be deemed an original but both of which taken together shall constitute but one and the same instrument.

h. Governing Laws and Forum. This Agreement shall be governed by, construed, and enforced in accordance with the laws of the Commonwealth of Virginia. The parties hereto further agree that any action brought to enforce any right or obligation under this Agreement shall be subject to the exclusive jurisdiction of the courts of the Commonwealth of Virginia.

IN WITNESS WHEREOF, Hughes Capital Management, Inc. and Employee have executed and delivered this Agreement as of the date written below.

_____  By: _____
Michael T. Allen

Name: Frankie Hughes
Title: President and Chief Investment Officer
Date: 6/26/14

# Job Description and Requirements

## Description

The candidate's responsibilities include, but are not limited to:
- Regular evaluation of the credit outlook of current portfolio holdings.
- Calling brokers ( or using electronic trading vehicles) to buy and sell securities according to client guidelines
- Researching potential additions to our portfolios, including new issuers, as to their suitability for inclusion.
- Collaborating with the portfolio management team on relative value comparisons and corporate bond strategy.
- Utilizing Wall Street, rating agencies, independent research platforms, and proprietary research in making credit evaluations. Interact with analysts as needed.
- Assessing and recommending other tools and models that may be helpful in credit decisions and interest rate risk evaluation.
- Serve as backup for trading and portfolio analysis on non- assigned accounts.
- Writing credit/sector commentaries.
- Developing sample portfolios for client and prospect presentations
- Participating in client and prospect presentation



Michael Allen <mtallen330@gmail.com>

# From The Office of Marti P. Murray

**Gara Paulson** <gpaulson@murrayanalytics.nyc>  Tue, Jan 12, 2016 at 4:50 PM
To: "mtallen330@gmail.com" <mtallen330@gmail.com>

Dear Mr. Allen,

Please see attached.

Regards,

Gara T. Paulson, Esq.

General Counsel and Business Manager

Murray Analytics, Inc.

590 Madison Avenue, 21st Floor

New York, NY 10022

GPaulson@murrayanalytics.nyc

www.MurrayAnalytics.nyc

(212) 371-4829

Follow @MurrayAnalytics



Corporate Restructuring, Financial Advisory,

Complex Valuation, and Litigation Support

CONFIDENTIALITY NOTICE.. This e-mail message contains attorney--client privileged and/or confidential information which is exempt from disclosure. If you are not the named addressee (or authorized representative), you may not disclose, copy, distribute, or use this message or its contents. If you have received this email in error, please notify the sender immediately and destroy the original message, any attachments thereto and all copies.

**2 attachments**

 **Michael Allen.pdf**
34K

 **26 - Reciever Order.pdf**
155K

January 12, 2016

Michael Allen
MtAllen330@gmail.com

Dear Michael Allen,

I, Marti P. Murray, was appointed as Receiver for Atlantic Asset Management on January 8, 2016 by Hon. William H. Pauley III in United States District Court Southern District of New York. Please see the applicable Court Order attached.

This letter confirms that your employment with Atlantic Asset Management has been officially terminated effective January 11, 2016.

If you have not already, you will need to return your security card, company owned laptop, cellphone, and any other company property that may be in your possession immediately. If you have personal belongings that you would like to retrieve from the Atlantic Asset Management offices please make arrangements with Gara Paulson to have those belongings sent to you. Ms. Paulson can be reached at GPaulson@MurrayAnalytics.nyc.

You will need to keep the company informed of your contact information including mailing address so that we are able to provide you with a hard copy of this letter as well as information you may need in the future.

Regards,

*Marti P. Murray* (signature)

Marti P. Murray
President
Murray Analytics, Inc.
590 Madison Avenue, 21st Floor
New York, NY 10022
mmurray@murrayanalytics.nyc
murrayanalytics.nyc
(212) 371-4829



**Connecticut Department of Labor**
Wage and Workplace Standards Division
200 Folly Brook Boulevard
Wethersfield, CT 06109

Tel.: 860-263-6790     www.ct.gov/dol

| OFFICIAL USE ONLY: | |
|---|---|
| Unit: | Agent Initials: |
| Industry Code: | |
| Territory: | |

# STATEMENT OF CLAIM FOR WAGES

**INSTRUCTIONS:** Complete both sides of this form, and sign. Type or print legibly. Complete all items to the best of your knowledge. Failure to do so may result in delays. Enclose any copies of documentation that may be relevant to your claim. Please notify us immediately by mail if you have a change of address, phone number or have been paid.

## EMPLOYEE INFORMATION

**1. Your Name (Employee)** MICHAEL T. ALLEN
**4. Date** 2/4/2016
**5. Social Security Number**
**5a. Sex** ☑ Male ☐ Female

**2. Your Address (Number and Street)** 15B OLD MILL ROAD
(City or Town) WESTPORT (State) CT (Zip Code) 06880

**3. Your Telephone Number** (203) 247-9057
**6. Type of Work Done / Occupation / Title** PORTFOLIO MANAGER - FIXED INCOME (BONDS) ASSET MGMT.

**7. I prefer to receive an acknowledgement letter by** ☐ Regular Mail ☐ Email  Email address:

## EMPLOYMENT INFORMATION

**8. Business Name (Employer)** ATLANTIC ASSET MANAGEMENT (FORMERLY DBA HUGHES CAPITAL MGMT)
**10. Business Telephone No** (212) 371-4829 / (646) 330-2916

**9. Business Street Address (not a P.O. Box)** 2187 ATLANTIC STREET
(City or Town) STAMFORD (State) CT (Zip Code) 06902

**11. Other Business Name(s) that might be used by employer** BUSINESS WAS PUT INTO RECEIVERSHIP ON 1/8/2016 BY NY FEDERAL DISTRICT COURT RECEIVER: MARTI P. MURRAY, MURRAY ANALYTICS, 590 MADISON, NY, NY 10022 (212) 371-4829 / (646) 330-2916

**12. Name of Person in charge** RECEIVER: MARTI P. MURRAY
**13. Title** "RECEIVER" AS NAMED BY US DISTRICT COURT SOUTHERN NY

**14. Did you work at the business address listed in item #8?** ☑ Yes ☐ No  Please provide location: 2187 ATLANTIC STREET, 8th FL STAMFORD, CT 06902

**15. Number of Hours Per Week** AT LEAST 40 (EXEMPT)
**Date Hired** MAY 2014
**First Wage Rate** $150K PER YEAR
**Last Wage Rate** $150K PER YEAR
**Quit / Layoff** ☑ SEE ATTACHED
Discharged
Still Employed

**16. Date of Separation** 1/11/2016
**Reason for the Separation** OPERATIONS TERMINATED BY COURT NAMED RECEIVER

**17. Wages Claimed From (Date)** 12/31/2015 (CLOSE OF)
**To (Date)** 1/11/2016
**At the Rate of** $3,125.00 PER WEEK
**Total Amount Claimed**

## CLAIM DETAILS

**18. Please check the reason(s) you are filing this claim:**

☑ Final paycheck(s) not received or incorrect
☐ Commission(s) not received or incorrect (please provide detailed information and employment agreement if available)
☑ Bonus
☑ Vacation Pay upon termination (please provide written policy)
☐ Minimum Wage

☐ Overtime wages (time and one-half)
☐ Not paid for all hours worked
☐ Non-Payment of Prevailing Rate on Public Works Project (please provide project name(s) on back of this form)
☐ Improperly classified as an independent contractor
☐ Bounced paycheck
☐ Illegal deductions
☐ No paystub

Explain why you believe the employer owes you wages. List the dates and hours for which you believe wages are due. Attach additional sheets if necessary.

PLEASE SEE ATTACHED EMAIL.

19. Did you ask the employer for the money you believe is due?

☑ Yes  Name and title of person you asked: MARTI P. MURRAY – COURT ORDERED "RECEIVER"

☐ No  If No, why _____

## ►►IMPORTANT◄◄

### PLEASE NOTE THE FOLLOWING:

1. This claim form will be returned to you if it is incomplete or illegible.
2. If you are complaining that you did not receive a **final paycheck**, you must physically report to the normal place you are paid and attempt to obtain payment yourself. Making phone calls and/or sending friends or relatives to obtain payment are not sufficient. If you do not attempt to obtain payment yourself, we will not investigate your claim.
3. This Division has jurisdiction over **wage issues only**. We cannot assist you in obtaining payment for time not worked (holiday pay, severance pay, etc.), or for expenses, tax issues, or pension plan issues. We may be able to assist you in obtaining payment for unused fringe benefits such as vacation pay, but only upon separation of employment.

In signing this form, I hereby attest to the following:

- That this is a true statement of wages due me to the best of my knowledge and belief. I hereby assign all wages and all penalties accruing because of their non-payment, and all liens securing them to the Labor Commissioner of the State of Connecticut to collect in accordance with the law.
- That I authorize the mailing at my own risk of any money paid on this claim.
- That I authorize the Labor Commissioner or any person authorized by the Labor Commissioner to approve a proposed compromise adjustment or settlement of this claim, unless I object in writing within ten days after notification to me at the address given by me to the Labor Commissioner. I understand my claim may be reassigned back to me to pursue in small claims court or through a private attorney.
- If I do not request in writing, subsequent to closure of this case, the return of any papers submitted by me in connection with this claim, I hereby authorize the Labor Commissioner to destroy them after three years.

20. I understand that this complaint form is subject to the Freedom of Information laws.

_Michael T. All_____  2/4/2016
Signature                    Date

_____  _____
Signature of Parent or Guardian (required if claimant is under 18 years old)  Date

WCA-1 (Rev 4/15)



CONNECTICUT DEPARTMENT OF LABOR
Partner of the American
Job Center Network

February 05, 2016

Michael Allen
15B Old Mill Road
Westport, CT 06880

RE: Atlantic Asset Management
    **Case ID: 125553**

Dear Michael Allen:

Your complaint of non-payment of wages has been received by the Wage and Workplace Standards Division. I have been assigned to your case and will initially determine whether the wages you are claiming are covered by current wage payment laws.

If you performed work outside the State of Connecticut and/or the employer is located in another state, our enforcement activities and jurisdiction would be greatly limited. You will be notified of other options if this is the case.

If covered, an investigation will then be conducted through correspondence, telephone contact, or personal visits to determine if the wage payment laws have been violated. If the wages are not owed, you will be notified of this determination.

If your complaint has been substantiated the employer will be notified of the violations of the wage payment laws and payment will be requested. An employer's failure to cooperate may result in legal action which could delay resolution of your case.

Since we conduct the majority of the investigation outside of this office, routine updates cannot be provided. However, if additional information is needed which is not available on the complaint form, you will be contacted.

Your patience in this process is appreciated.

Sincerely,

*David LaRosa*

David LaRosa
Wage Enforcement Agent
(860)263-6611

M. ALLEN
15B OLD MILL RD.
WESTPORT, CT 06880

ATTN: PRO SE OFFICE

7016 0600 0001 0051 2551

HON. WILLIAM H. PAULEY III
c/o PRO SE OFFICE
U.S. DISTRICT COURT, SOUTHERN DISTRICT OF NY
DANIEL PATRICK MOYNIHAN U.S. COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

CERTIFIED MAIL



PAID
WESTPORT, CT
06880
SEP 10, 16
AMOUNT
$4.40
R2304H109351-17

1000

10007

