UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

v.

ATLANTIC ASSET MANAGEMENT,
LLC,

          Defendant.

15-CV-9764 (WHP)

---

**RECEIVER'S FINAL REPORT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION (I) TERMINATING THE RECEIVERSHIP; (II) DISCHARGING RECEIVER AND HER PROFESSIONALS; AND (III) GRANTING RELATED RELIEF**

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000

Attorneys for the Receiver, Marti P. Murray
March 26, 2019

## TABLE OF CONTENTS

Page

BACKGROUND ...................................................................................................................1

    A.    Procedural History and the Allegations of the Complaint ............................1

    B.    The Plan of Distribution ................................................................................2

    C.    Current Status................................................................................................3

RELIEF REQUESTED..........................................................................................................4

    A.  Remaining Tasks..............................................................................................4

    B.  Payment of Future Professional Fees and Expenses.......................................5

    C.  Discharging the Receiver from Her Duties, Enjoining Claims
          Against Her and Her Professionals, and Closing Case ...............................5

CONCLUSION ......................................................................................................................7

Marti P. Murray, the receiver ("Receiver") for Atlantic Asset Management LLC ("AAM") respectfully submits this Final Report and Memorandum of Law in Support of Motion (I) Terminating the Receivership; (II) Discharging Receiver and Her Professionals; and (III) Granting Related Relief (the "Motion").

## BACKGROUND

A. **Procedural History and the Allegations of the Complaint.**

The Securities and Exchange Commission ("SEC") filed its complaint against AAM on December 15, 2015 (Docket Entry ("DE") 1), alleging that AAM had violated Sections 206(1), (2), (4) and 207 of the Investment Advisors Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), (2), (4) and 80b-7, and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.  (DE 1, ¶¶ 78-82.)  The SEC alleged that AAM, a registered investment adviser, had invested over $40 million of its clients' funds in bonds issued by the Wakpamni Lake Community Corporation (the "Tribal Bonds") in August 2014 and April 2015, without disclosing to those clients the numerous conflicts of interest inherent in the transactions as a result of the benefits that they conferred on AAM and AAM's affiliates. (DE 1, ¶¶ 4, 5, 6, 16, 27-30, 31-42, 53-64.).

On December 15, 2015, the Court entered an Order to Show Cause, Temporary Restraining Order and Order Granting Other Relief (DE 3), directing AAM to show cause why it should not be preliminarily enjoined from further violations of the Advisers Act, and pending a hearing on the SEC's application for a Preliminary Injunction, temporarily restraining AAM from violating the Advisers Act, temporarily appointing Ms. Murray as an Independent Monitor, and imposing certain notification obligations on AAM respecting transfers of any assets to AAM's control persons.

On December 21, 2015, the Court entered its Order Granting Preliminary Injunction and Other Relief, on consent (DE 16).  On January 8, 2016, on the SEC's application, the Court

1

entered an Order to Show Cause why the Temporary Monitor should not be converted to a Receiver for AAM (DE 22.)  The Court amended its Preliminary Injunction Order on January 8, 2016, and appointed Ms. Murray as Receiver for AAM (the "Receivership Order") (DE 26).

On January 26, 2016, the Court entered Judgment on consent against AAM, permanently enjoining AAM from further violations of Sections 206(1), (2) and (4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), (2), (4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8. (DE 44.).

**B.** **The Plan of Distribution.**

On April 24, 2017, the SEC and the Receiver filed their Notice of Filing of Third Revised Joint Plan of Distribution for Atlantic Asset Management, LLC and Proposed Order Approving Plan (the "Plan") (DE 198). On the same date, the Court entered its Order Approving Third Revised Joint Plan of Distribution (DE 199).

On June 6, 2017, the SEC and the Receiver filed their Notice of Proponents' Motion for an Order Approving the Distributable Amount and Authorizing the Proponents to Carry Out the General Distribution (DE 217). On June 9, 2017, the Court entered its Order Approving Distributable Amount and Authorizing Proponents to Carry Out the General Distribution ("Distribution Order") (DE 221).

Shortly after entry of the Distribution Order, the Receiver distributed the Distributable Amount, defined in the Plan as "the amount determined by the Proponents, and as approved by the Court, that is available for distribution in the General Distribution or Supplemental Distribution."

At that point, the Receivership could have been wound up. However, on July 11, 2017, non-party Hartford Fire Insurance Company ("Hartford") filed a Request for Leave to File Suit (DE 224) against the Receiver and others. On August 3, 2017, the Court entered a Scheduling

Order (DE 232) authorizing Hartford to file a declaratory judgment action (the "Hartford Action") by no later than September 8, 2017.

On September 8, 2017, Hartford filed a complaint (the "Hartford Complaint") commencing a declaratory judgment action encaptioned *The Hartford Fire Insurance Company v. Murray, et al.*, Case No. 17-CV-06855-WHP (the "Hartford Action"). To the exclusion of the Receiver, Hartford and the Insured Plans (as defined in the Hartford Complaint) settled the Hartford Action just over one year later. On November 19, 2018, the Court entered an order on consent dismissing the Hartford Action (Hartford Action DE 81).

C.    **Current Status.**

As of the date of this Motion, the Receiver has distributed substantially all of AAM's assets in accordance with the Plan and other orders of the Court. See Final Report, attached hereto as Exhibit A (showing cash on hand of $16,604.41).

Substantially all of AAM's pre-Receiver books and records and electronically stored information ("ESI") were either turned over to the SEC for storage or destroyed in accordance with orders of the Court.

The Receiver has caused all required tax filings through tax years 2017 through 2019 to be filed.

Other than this Motion and final fee applications ("Final Fee Applications") of the Receiver and her counsel for the period from July 2018 to February 28, 2019 and the final invoice of Miller Kaplan Arase LLP ("MKA"), no motions or other applications to the Court are pending.

As a result, it is the Receiver's view that the Receivership is no longer necessary. The SEC concurs and joins in this Motion.

**RELIEF REQUESTED**

A.  **Remaining Tasks.**

As set forth above, the Receiver and her counsel, Klestadt Winters Jureller Southard & Stevens, LLP ("KWJS&S") have not filed applications for compensation since June 2018. Concurrently herewith, the Receiver and KWJS&S will file the Final Fee Applications. The Final Fee Applications will request that previous holdbacks be paid. The Receiver requests authority to pay the amounts awarded by the Court in the Final Fee Applications.

As more fully described in the *Thirty-Third Compensation Application of Marti P. Murray, as Receiver of Atlantic Asset Management, LLC, for Payment of Compensation and Reimbursement of Expenses for the Period July 1, 2018 Through February 28, 2019* (the "Thirty-Third Fee Application"), filed concurrently herewith, MKA incurred nominal fees and expenses assisting the Receiver with extant issues related to the IRS Stipulation (as defined therein). A final invoice for approval of those fees and expenses is attached to the Thirty-Third Fee Application as Exhibit E.

If, after payment of the approved fees and expenses set forth in the Final Fee Applications, there are nominal funds left at AAM ("Remaining Funds"), the Receiver proposes that she hold the Remaining Funds for a period of six (6) months to cover any unanticipated expenses, and then turn over remaining funds to the SEC for transmittal to the United States Treasury in accordance with 28 U.S.C. § 2042.

Performing these remaining administrative tasks arising in connection with the winding up the Receivership is consistent with prior orders of the Court. *See* Order Approving Request for Discharge at 3-4, *SEC v. Stein*, No. 09-CV-03125 (S.D.N.Y. Sept. 21, 2015), Dkt. No. 279 ("Notwithstanding the termination of the Receivership, the Receiver is granted limited residual authority to perform certain tasks for the termination of the Receivership, including, but not

4

limited to, all further action necessary to implement this Order"); Order Terminating Receivership and Closing Action at 3, *SEC v. Ashbury Capital Partners, L.P.*, No. 00-CV-07898 (S.D.N.Y. Sept. 24, 2013), Dkt. No. 242 ("The Receiver is authorized to undertake any and all activities reasonably necessary to wind up the affairs of the Receivership."); Closing Order at 3, *SEC v. Northshore Asset Management, LLC*, No. 05-CV-02191 (S.D.N.Y. Dec. 27, 2011)., Dkt. No. 621 ("[T]he Receiver, with the assistance of his professionals, is hereby authorized and empowered to complete any remaining administrative task(s) that may arise in connection with the Receivership Proceeding and to take all actions necessary to implement the relief granted in this Order.").

B. **Payment of Future Professional Fees and Expenses.**

To the extent funds are available to do so, following Court approval of the Final Fee Applications, the Receiver requests authority from the Court to pay future fees and expenses incurred by the Receiver and KWJS&S as the Receiver deems reasonable in the course of administering the wind up of the receivership and implementing the terms of the Order granting this Motion.

This request is consistent with other receiverships and appropriate given the limited funds remaining. *See Stein*, Order at 3-5 (authorizing the payment of legal fees and expenses incurred by the Receiver's counsel "in the course of assisting in the conclusion of the Receivership"); *see also Ashbury Capital*, Order at 3.

C. **Discharging the Receiver from Her Duties, Enjoining Claims Against Her and Her Professionals, and Closing Case.**

Upon termination of the receivership, the Receiver respectfully requests the Court to release her and her professional advisors from all claims and liabilities arising out of and/or pertaining to the receivership.

Federal Receivers are considered arms of the court, and the court that appoints the receiver determines the scope of the receiver's authority. *Federal Home Loan Mortgage Corp. v. Tsinos*, 854 F. Supp. 113, 115 (E.D.N.Y. 1994). As such, receivers, in their individual capacity, are generally immune from any suit. *See Walker Mgmt., Inc. v. Affordable Cmtys. Of Missouri*, 912 F. Supp. 455, 457 (E.D. Mo. 1996) ("Where applicable, the immunity of a court appointed receiver is absolute."). Only in the "rare instance where a receiver has acted outside the scope of his or her authority may the receiver be sued in his or her individual capacity." *Tsinos*, 854 F. Supp. at 116 (citing *McNulta v. Lochridge*, 12 S. Ct. 11 (1891)). This Court thus has the authority to fashion relief for the Receiver and her representatives to protect them from claims and actions arising from the performance and conduct of their duties. In this case, the Court has ordered that the Receiver be indemnified by AAM for such claims (Receivership Order at 5). That indemnification is, however, dependent as a practical matter on AAM having assets with which to pay to defend any suit and to pay any successful claims. In closing the case and liquidating all assets, AAM would have no funds to indemnify the Receiver, who thus could be personally liable for the defense of her actions while serving as an arm of the Court. Such a result would be inequitable.

This request is consistent with this Court's and other federal courts' recent orders terminating receiverships. *See Stein*, Order at 3 ("[T]he Receiver, his agents, employees, members, officers, independent contractors, attorneys and representatives are discharged from any and all liabilities, duties, responsibilities, obligations and authority arising from, related to, derived from or defined in the Receivership Order"); *Federal Home Loan Mortgage Co. v. Spark Tarrytown Inc.*, 829 F. Supp. 82 (S.D.N.Y. 1993) ("Generally, a receiver may not sure or be sued without the express permission of the court that appointed him."); *Ashbury Capital*, Order at 4 ("Upon entry of this Order, all creditors, investors and other parties in interest shall be

permanently and forever barred, restrained and enjoined from taking any action to impose or seeking to impose liability on the Receiver and his professionals, without first obtaining relief to do so from the Court"); Order at 6-7, *SEC v. Tri Energy, Inc.*, No. 05-CV-00351 (C.D. Cal. Jun. 13, 2016, ECF No. 327 ("[T]he Receiver and his agents, employees and representatives are deemed released, discharged and exonerated from all liability that may have arisen during the entire time of the Receivership and distribution processes").

Accordingly, the Receiver respectfully requests that the Court exercise its broad equitable powers by approving the limitation of liability and injunctive provisions in the Closing Order.

## CONCLUSION

For all the foregoing reasons, the Receiver respectfully requests that the Court grant this Motion (i) terminating the receivership, (ii) discharging the Receiver from her duties; (iii) enjoining claims against the Receiver and the Receiver's professionals; (iv) authorizing the Receiver to take appropriate actions to wind up the receivership; and (v) related relief.

Dated: New York, New York
March 26, 2019

        KLESTADT WINTERS JURELLER
        SOUTHARD & STEVENS, LLP

        By: */Tracy L. Klestadt*
            Tracy L. Klestadt
            Joseph C. Corneau
        200 West 41st Street, 17th Floor
        New York, NY 10036
        (212) 972-3000

        *Attorneys for the Receiver, Marti P. Murray*

## **Exhibit A**

| Section | Line | | | |
|---|---|---|---|---|
| | | **CONSOLIDATED FINAL ACCOUNTING REPORT on the CASH BASIS for** | | |
| A | 1 | DISTRIBUTION FUND | | |
| | 2 | SEC Action Number | | |
| | 3 | AP File No. / Case Number | | |
| | | **Period Covered in this Report:** | | |
| | 4 | From 1/8/2016 | | |
| | 5 | To 2/28/2019 | | |
| | | | | |
| B | | **Increases in Fund Balance** | | |
| | 1 | Contributions/Deposits | $ 593,178.50 | |
| | 2 | Investment/Interest Income | - | |
| | 3 | Management Fee Income | 1,214,314.59 | |
| | 4 | Insurance Premium Refund | 14,841.85 | |
| | 5 | Miscellaneous | 2,711.10 | |
| | | Subtotal Funds Received | | $ 1,825,046.04 |
| C | | **Decreases in Fund Balance** | | |
| | 1 | Gross Distributions to Claimants/Investors | (550,327.86) | |
| | | Less Returned & Cancelled Checks | - | |
| | | Distributions to Claimants/Investors, Net | | (550,327.86) |
| | | Payments to Other than Claimants/Investors: | | |
| | 2 | Plan Administration Fees and Costs | (944,921.64) | |
| | 3 | Tax Administrator Fees and Expenses | (14,000.00) | |
| | 4 | Investment/Bank Fees | (1,522.60) | |
| | | Income Tax Payments, Net of Refunds | | |
| | 5 | Federal | 195.77 | |
| | 6 | District of Columbia/State | 8,820.41 | |
| | | Payroll Tax Payments, Net of Refunds | | |
| | 7 | Federal | (24,178.79) | |
| | 8 | District of Columbia/State | (3,390.59) | |
| | 9 | Employee Payroll | (51,970.43) | |
| | 10 | Vendor | (48,940.88) | |
| | 11 | Insurance Premium | (12,694.02) | |
| | 12 | Miscellaneous | (165,511.00) | |
| | | Subtotal Disbursements | | (1,808,441.63) |
| D | | **Ending Balance** | | $ **16,604.41** |

Receivership Final Cash Position Analysis
2/28/2019

| | Expense | Pro Rata Distribution | Cash Balance |
|---|---|---|---|
| Cash on Hand as of 2/28/2019 | | | $ 16,604.41 |
| Less: | | | |
| Reserve for Expenses | | | |
|    Miller Kaplan Tax Services | (6,650.00) | | |
| Total Reserve for Expenses | (6,650.00) | | |
| Available Cash after Reserve for Expenses | | | $ 9,954.41 |
| Less: | | | |
| Receiver Fees | | | |
|    Receiver Fees Holdback through 6/30/2018 | (2,689.50) | | |
|    Receiver Fees 7/1/2018 - 2/28/2019 | (7,080.36) | | |
| Total Receiver Fees | (9,769.86) | 30% | |
| Total Pro Rata Receiver Fees | | (3,021.76) | |
| Counsel Fees | | | |
|    Counsel Fees Holdback through 6/30/2018 | (9,759.63) | | |
|    Counsel Fees 7/1/2018 - 2/28/2019 | (12,654.83) | | |
| Total Counsel Fees | (22,414.46) | 70% | |
| Total Pro Rata Counsel Fees | | (6,932.65) | |
| Total Actual and Pro Rata Receivership Fees | (32,184.32) | (9,954.41) | |
| Estimated Cash Balance at Closing | | | $ - |